OPINION OF THE COURT
Edward H. Lehner, J.
Before the court are motions by both parties for summary judgment.
*562 FACTS
By lease dated June 16, 1966 defendant, New York University (NYU), as owner of the premises at 3 Washington Square Village, rented apartment A-10 to: "The Cooper Union for the Advancement of Science and Art to be occupied by: Professor George Sadek”. The lease provided for a $365 monthly rental but stipulated that as long as "tenant continues in the employment of the landlord as a full time faculty member or administrator the rent shall be $292.50 per month.” The lease also granted defendant the right to terminate in the event "tenant ceases to be such a full time employee.”
The lease was executed by the Cooper Union for the Advancement of Science and Art (Cooper Union), which renewed the lease from time to time. Plaintiff Sadek, who is a professor at Cooper Union, has continuously resided in the apartment since 1966 and has been paying the lower affiliation rental.
Notwithstanding the reference to affiliation in the lease, Professor Sadek has never had any affiliation with defendant. Cooper Union is an independent educational institution located a few blocks from N.Y.U.
In his moving affidavit, the director of real estate for defendant states that the university acquired the building in 1963, and that in "the late 1960’s and early 1970’s, N.Y.U. housing was leased to faculty members of other educational institutions as a good will gesture within the educational community”. He states that now, however, because of the very tight housing market in the Greenwich Village area, in order to provide housing to its faculty and staff, it is imperative that it recover possession of apartments from persons not affiliated with the school.
In May 1985, N.Y.U. sent plaintiffs a notice that it would not renew the then current lease after its expiration on September 30, 1985 "because it requires the premises in connection with its educational purposes, including but not limited to, housing for affiliated persons”.
THE COMPLAINT
In their complaint plaintiffs seek a judgment declaring that their tenancy is subject to the Rent Stabilization Law (RSL; *563 Administrative Code of City of New York § YY51-1.0 et seq.), and that N.Y.U. does not have the right to refuse to renew the lease.
THE STATUTES
In Slaven v Syracuse Univ. (92 AD2d 462 [1st Dept 1983]) and Museum of Modern Art v Kirk (111 Misc 2d 1074 [App Term, 1st Dept 1981]) it was held that tenants residing in buildings owned by certain nonprofit institutions are exempt from coverage under the Emergency Tenant Protection Act (ETPA; L 1974, ch 576, § 4, as amended).
In an effort to ameliorate the seeming hardship resulting from such decisions, the Legislature in 1983, in Omnibus Housing Act § 55 (OHA; L 1983, ch 403), modified the exemption to read as follows: "housing accommodations owned or operated by a hospital, convent, monastery, asylum, public institution, or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis other than those accommodations occupied by a tenant on the date such housing accommodation is acquired by any such institution, or which are occupied subsequently by a tenant who is not affiliated with such institution at the time of his initial occupancy” (McKinney’s Uncons Laws of NY § 8625 [a] [6] [ETPA § 5 (a) (6)]). In OHA § 50, RSL § YY51-6.0 (c) (9) (c) (i) was amended to provide that an owner may refuse to renew a lease:
"(c) where the housing accommodation is owned by a hospital, convent, monastery, asylum, public institution, college, school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis and * * *
"(i) the tenant’s initial tenancy commenced after the owner acquired the property and the owner requires the unit in connection with its charitable or educational purposes including, but not limited to, housing for affiliated persons; provided that with respect to any tenant whose right to occupancy commenced prior to July first, nineteen hundred seventy-eight pursuant to a written lease or written rental agreement and who did not receive notice at the time of the execution of the lease that his tenancy was subject to non-renewal, the institution shall not have the right to refuse to renew pursuant to this subparagraph; provided further that a tenant who was affiliated with the institution at the commencement of his *564 tenancy and whose affiliation terminates during such tenancy shall not have the right to a renewal lease”.
DISCUSSION
As a result of these amendments, a tenant of premises owned by a nonprofit educational institution was covered under the ETPA if either he was in occupancy prior to the time the institution acquired the property or he came into possession as one not affiliated with the institution.
N.Y.U., in what is intended as a concession, states that Professor Sadek, as one not affiliated with N.Y.U. at the time he came into possession, became covered by the ETPA as of the effective date of the OHA (June 30, 1983). However, it claims that under OHA § 50 his lease need not be renewed because at the time of the expiration of the lease he had notice that it "was subject to non-renewal”.
The parties have a strong disagreement as to the intent of section 50. Plaintiffs argue that since the latter provision of the section refers to nonrenewal of leases of affiliated tenants, the other provision of that section (permitting termination of leases of tenants in occupancy prior to July 1, 1978 if they had notice at the time of the execution of their lease that it was subject to nonrenewal) also applies only to affiliated tenants, as the section was intended to provide "protection to long-standing tenants who otherwise would have been exempt under section 55.” Hence, plaintiffs conclude that Professor Sadek, as a nonaffiliated tenant, is not subject to the nonrenewal provisions of section 50. Plaintiffs maintain that unless this is the proper interpretation, the provision in the section allowing nonrenewal of leases of affiliated tenants would be surplusage, as section 55 by its terms exempts affiliated tenants from any coverage under the ETPA.
Defendant, on the other hand, contends that the section 55 reference to affiliated tenants is a "restatement of the longstanding decisional law”.
The court finds that neither contention is correct. The seeming conflict between OHA §§50 and 55 is explained by the fact that the sections amend different laws. Section 55 amends the ETPA while section 50 amends the RSL. The exemption in the ETPA with respect to affiliated tenants applies to those who came into possession after the adoption of vacancy decontrol in 1971. There is no similar exemption in the RSL.
*565 Although Code of the Rent Stabilization Association of New York City, Inc. § 2 (g) (6) contains a flat exemption from coverage for units owned by nonprofit institutions, that section (purportedly adopted to conform to the provisions of the ETPA) has been held "void and unenforceable” as not in conformity with the RSL. (Cornell Univ. v New York City Conciliation & Appeals Bd., 87 Misc 2d 1060, 1062 [Sup Ct, NY County 1976], affd on opn below 55 AD2d 587 [1st Dept 1976].) In that case it was held that although upon the occurrence of a vacancy of a unit owned by such an institution there would be no coverage under the ETPA and the unit would be destabilized, a tenant in occupancy prior to July 1971 was protected by the RSL. It is noted that in Slaven v Syracuse Univ. (supra) the court emphasized that its ruling was limited to "those who were vacancy decontrolled between 1971 and 1974.”
Hence, Professor Sadek, as one in occupancy prior to July 1971 is covered by the RSL. However, in determining his right to a renewal lease, the court must consider the effect of the aforesaid amendment to the RSL contained in OHA § 50.
In asserting that Professor Sadek had notice that his lease was subject to nonrenewal, N.Y.U. relies upon the above-referred to termination provisions.
The court finds that such provision does not satisfy the notice of nonrenewal requirement of section 50, and therefore defendant is required to offer a renewal lease.
The lease permits defendant to terminate in the event Professor Sadek "shall cease to be a full time employee” of N.Y.U. Since he was not at the time of execution (and has never been since) an employee of that school, this provision was of no force and effect. In drafting the lease, defendant apparently employed a clause normally used in leases for persons affiliated with the university. At the time of execution of this lease in 1966 (prior to adoption of the RSL), there was no rent regulation applicable to the subject building. Thus, N.Y.U. was free to draft any termination clause it deemed appropriate. Its use of language that permitted termination only upon the happening of an event that in fact could never occur, because Professor Sadek could not "cease” doing something that he was not doing, i.e., working for N.Y.U., results in the clause having no vitality. Consequently, it does not provide the requisite statutory notice of nonrenewal.
*566 CONCLUSION
Defendant’s motion for summary judgment is denied, and plaintiffs’ motion is granted declaring that the plaintiffs’ tenancy is subject to the RSL, and that defendant does not have the right to refuse to issue a renewal lease. The branch of plaintiffs’ motion seeking an award of attorneys’ fees is granted to the extent that upon the filing of a note of issue and payment of the appropriate fees, the clerk shall assign this cause to an I.A.S. part for an assessment as to the amount of reasonable attorneys’ fees to which plaintiffs are entitled. The claim for such fees is severed.